# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 16, 2010

No. 10-40208

Lyle W. Cayce
Clerk

DAN KOVACIC, Individually, and With An Interest in the Estate of Zachary Kovacic, Deceased; ELIZABETH FOX, Individually, and With An Interest in the Estate of Zachary Kovacic, Deceased; ERIN MICHELLE KOVACIC, Individually, and As Next Friend of Carley Nicole Kovacic, Both With An Interest in the Estate of Zachary Kovacic, Deceased, CARLEY NICOLE KOVACIC, Minor Child With an Interest in the Estate of Zachary Kovacic, Deceased,

Plaintiffs-Appellees

v.

JUAN VILLARREAL, Individually, and In His Official Capacity; JOSE D. RUBIO, Individually, and In His Official Capacity,

Defendants-Appellants

Appeal from the United States District Court
for the Southern District of Texas

Before KING, GARWOOD, and DAVIS, Circuit Judges.
GARWOOD, Circuit Judge.

Plaintiffs-appellees brought a 42 U.S.C. § 1983 claim against City of Laredo Police Officers Juan Villarreal and Jose D. Rubio to recover damages for the death of Zachary Kovacic. The issue on appeal is whether the defendants-appellants are entitled to summary judgment on the defense of qualified immunity. For the reasons stated below, we find that Officers Rubio

and Villarreal are entitled to summary judgment and reverse the district court's order denying it.

## STANDARD OF REVIEW

We review *de novo* a district court's denial of a motion for summary judgment on the basis of qualified immunity. *Flores v. City of Palacios*, 383 F.3d 391, 394 (5th Cir. 2004).  Summary judgment is applicable when it is determined that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a).  A denial of a motion for summary judgment on the issue of qualified immunity is immediately appealable, to the extent that the district court's order turns on an issue of law.  *Good v. Curtis*, 601 F.3d 393, 397 (5th Cir. 2010).[1]  Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).  As we said in *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 456 (5th Cir. 2001) (quoting with approval from *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997)):

> "Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the

---

[1]The district court did find in its order denying summary judgment that there was a factual dispute sufficient to defeat summary judgment.  When deciding an interlocutory appeal of a denial of qualified immunity, we do not have jurisdiction to review the genuineness of any factual disputes but can decide whether the factual disputes are material.  *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000).  The district court identified only one disputed fact in its order– the officers' testimony about Kovacic's level of intoxication.  If the district court does not specify all the facts that it finds to be in dispute, we "conduct an analysis of the record to determine what issues of fact the district court likely considered genuine." *Id.  See also, e.g., Colston v. Barnhart*, 146 F.3d 282, 285 (5th Cir. on petition for rehearing en banc), *cert. denied*, 119 S.Ct. 618 (1998); *Thompson v. Upshur County, Tx.*, 245 F.3d 447, 455-56 (5th Cir. 2001); *Manis v. Lawson*, 585 F.3d 839, 842-43 (5th Cir. 2009).  After conducting such a review (and accepting, *arguendo*, plaintiffs' claims as to the evidence of Kovacic's level of intoxication), we find that there are no disputes of fact that are material to the question of whether or not the defendants are entitled to summary judgment on the basis of qualified immunity.

> burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.' *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992).  We do 'not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.' *Id.*"

Further, where as here, a defendant moves for summary judgment and correctly points to an absence of evidence to support the plaintiff's claim on an issue as to which plaintiff would bear the burden of proof at trial, then summary judgment should be granted for the defendant unless the plaintiff produces summary judgment evidence sufficient to sustain a finding in plaintiff's favor on that issue.  *Anderson v. Liberty Lobby Inc.*, 106 S.Ct. 2505, 2511 (1986); *Celotex Corp. v. Catrett*, 106 S.Ct. 2548, 2552-53 (1986); *Johnson v. Deep East Texas Narcotics Trafficking Task Force*, 379 F.3d 293, 337 (5th Cir. 2004) (qualified immunity).

## FACTS AND PROCEEDINGS BELOW

On August 9, 2007, Zachary Kovacic met several of his co-workers at the Cheers Cocktail Lounge (Cheers) in Laredo, Texas at around 9:30 p.m. Kovacic was working on a work crew in Laredo, and his wife and daughter had traveled from their home in Colorado to join him.  After several hours at Cheers, Kovacic was escorted outside of the bar by Cheers employees. Kovacic was allegedly intoxicated and involved in an altercation with another man over a woman.  At approximately 1:33 a.m., an employee of Cheers called the Laredo Police Department to notify them that there was an intoxicated person at the bar who needed to be escorted off of the premises.  Several Laredo police officers arrived, including appellants Rubio and Villarreal. Kovacic, who had been handcuffed by Cheers employees, was handcuffed again by the officers and placed in the back of Officer Rubio's squad car.  One

3

of the officers contacted the Webb County Jail and was told that due to overcrowding, there was not room for a person charged only with a Class C misdemeanor, which applies to the offense of public intoxication.  The officers informed the friends and relatives of Kovacic who were still at Cheers that they, the officers, were going to transport Kovacic to his hotel, the Value Inn on Loop 20.  At 2:08 a.m., Kovacic was unhandcuffed and  released into the parking lot of an Exxon Speedy Stop gas station at the intersection of Del Mar and Loop 20.  The Speedy Stop was a convenience store/gas station which was then lighted and open to the public for business, as it was 24 hours a day.  It was some five to six miles from Kovacic's hotel.  The officers stated in their summary judgment affidavits that Kovacic insisted that he be dropped off at the gas station, where he would call his wife at the hotel to come pick him up. The officers left the parking lot after Kovacic got out of the car.  At approximately 2:33 a.m., Kovacic was hit while walking in the roadway of Loop 20, about 1/4 mile north of the Speedy Stop, by an unknown hit-and-run driver.  He did not regain consciousness and  subsequently died from the injuries he thus received.[2]  Plaintiffs presented evidence that, as later determined, Kovacic's blood alcohol at the time he was hit was .205.

Plaintiffs, who all have an interest in the estate of Zachary Kovacic, filed this action against Cheers Cocktail Lounge, Officers Villarreal and Rubio, the former Laredo Chief of Police, and the City of Laredo.  The original claims against appellants were under 42 U.S.C. § 1983 for false arrest, excessive force and failure to protect.  The appellants filed a FED. R. CIV. P. 12(b)(6) motion to dismiss arguing that the plaintiffs had failed to state a

---

[2]The next day or so, Kovacic's wallet was found by a third party behind a dumpster at the Speedy Stop.  There was no money in it when thus found.  Kovacic had cashed a several hundred dollar paycheck earlier in the day on August 9.

valid constitutional claim. While their motion to dismiss was still pending before the district court, appellants filed a motion for summary judgment. The district court issued an order granting in part and denying in part the motion to dismiss. The court dismissed all claims against the officers save for the 42 U.S.C. § 1983 due process claim under the "special relationship" theory. The district court subsequently denied the appellants' motion for summary judgment. Appellants here interlocutorily appeal the denial of their motion for summary judgment.

## DISCUSSION

Section 1983 provides a cause of action for persons who have been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by the actions of a person or entity operating under color of state law. 42 U.S.C. § 1983. Qualified immunity was created to insulate government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 102 S.Ct. 2727, 2738 (1982). To determine if a defendant is entitled to qualified immunity, this court must determine "whether the defendant's actions were objectively unreasonable in light of clearly established law at the time of the conduct in question." *Freeman*, 483 F.3d at 410-11. In light of the Supreme Court's decision in *Pearson v. Callahan*, we are permitted to consider the question of whether a defendant is entitled to qualified immunity without determining whether or not the plaintiff's constitutional rights were violated. 129 S.Ct. 808, 821 (2009).

There is a recognized substantive due process right for individuals to be free from bodily harm caused by the state, but as a general rule, there is no constitutional duty that requires state officials to protect persons from

5

private harms. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.* 109 S.Ct. 998, 1004 (1989). The Supreme Court in *DeShaney* did recognize that there could be exceptions to this general rule. One of these exceptions applies when there is a "special relationship" between the individual and the state. This relationship is formed "[w]hen the state, through the affirmative exercise of its powers, acts to restrain an individual's freedom to act on his own behalf 'through incarceration, institutionalization, or other similar restraint of personal liberty'." *McClendon v. City of Columbia,* 305 F.3d 314, 324 (5th Cir. 2002) (quoting *DeShaney*, 109 S.Ct. at 1005). The state does have a constitutional duty to protect individuals in such relationship to the state from dangers, which in certain circumstances can include private violence. *McClendon*, 305 F.3d at 324.

We hold that defendants Villarreal and Rubio are entitled to qualified immunity from plaintiffs' section 1983 claim. A constitutional right is clearly established for the purposes of section 1983 only if the law is clear enough such that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 107 S.Ct. 3034, 3039 (1987). To determine whether state officials had "fair warning" that their conduct was unconstitutional, we consider the status of the law both in our circuit and in our sister circuits at the time of the defendants' actions. *McClendon*, 305 F.3d 314 at 329. The plaintiffs argue that a "special relationship" existed between Kovacic and the defendant officers because he had been in their custody at one point in time and thus the officers should be liable for the private violence perpetrated against him by the hit-and-run driver. Plaintiffs have not referenced a single case in either the district courts or the court of appeals of this circuit in which state actors were held liable for private harm

caused to an individual after he was released from custody. In *DeShaney* itself, the Court held that the state actor at issue, a county Department of Social Services, had no duty to act because the plaintiff was no longer in the department's custody and thus his liberty to act on his own behalf was not limited by the state actor. 109 S.Ct. at 1005-06.

The plaintiffs do point to a case decided by the Sixth Circuit, *Davis v. Brady*, in which that court found that the plaintiff had a valid section 1983 claim against police officers who abandoned him in an intoxicated condition on a highway, where he was subsequently hit by a car and severely injured. 143 F.3d 1021 (6th Cir. 1998). However, the facts in *Davis* distinguish it from the instant case. The plaintiff in *Davis* testified that he asked the officers not to be released on the road but the officers threw him out of the car in order to "teach [him] a lesson." *Id*. at 1023. As stated above, once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. The plaintiffs in this case have not presented any evidence to contradict Rubio's and Villarreal's affidavits that Kovacic demanded to be let out of the squad car in the Speedy Stop parking lot and thus was released from their custody at his request. There is also no evidence in the record that shows that the officers had any reason to think that Kovacic likely would not call his wife to pick him up as he indicated, or that the officers were aware that Kovacic was lacking the resources to secure another way home.

Additionally, the Sixth Circuit recognizes the "state-created danger" theory of section 1983 liability and references it in its opinion in *Davis*. *Id*. at 1025. A number of courts have interpreted *DeShaney* to allow a second exception to the rule against state liability for violence committed by private

actors in situations where "the state actor played an affirmative role in creating or exacerbating a dangerous situation that led to the individual's injury." *McClendon*, 305 F.3d at 324.  The Fifth Circuit has not adopted the "state-created danger" theory of liability.  *See Bustos v. Martini Club Inc.*, 599 F.3d 458, 466 (5th Cir. 2010); *Rios v. City of Del Rio*, 444 F.3d 417, 422 (5th Cir. 2006).  As such, the analysis in *Davis* pertaining to whether the police officers put the victim in a more vulnerable position than he would have been otherwise is not applicable in this circuit and would not put the officers on reasonable notice of a constitutional violation.

Plaintiffs cite to *Walton v. Alexander* as their sole support in the Fifth Circuit for the "special relationship" theory as applied to this situation.  44 F.3d 1297 (5th Cir. 1995).   In *Walton*, this court only specifically holds that it adopts the special relationship theory outlined in *DeShaney*.  It does not provide any support for expanding an officer's duty under section 1983 past the point in time when the victim is no longer in the officer's custody.  Given the lack of any contrary precedent, we hold that reasonable, competent officers would not conclude that it would violate Kovacic's constitutional rights to honor his request that he be let out at the Speedy Stop.  No such constitutional law was then, or is now, clearly established.  The defendant officers are entitled to qualified immunity, and the district court's denial of their motion for summary judgment is reversed.

## CONCLUSION

For the foregoing reasons, we REVERSE the district court's order denying the officers' motion for summary judgment on plaintiffs' section 1983 claim.