United States Court of Appeals
Fifth Circuit

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

F I L E D

July 1, 2011

Lyle W. Cayce
Clerk

No. 11-70020

HUMBERTO LEAL GARCIA,

Plaintiff–Appellant

v.

JOSE E CASTILLO; TIMOTHY FALLON; HENRY R HOLLYDAY; BEXAR
COUNTY CRIMINAL INVESTIGATION LABORATORY; BEXAR COUNTY,
TEXAS; AURORA SANCHEZ

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-CV-950

Before GARZA, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM:[*]

Plaintiff–Appellant Humberto Leal Garcia ("Leal") appeals the district
court's order dismissing his claim under 42 U.S.C. § 1983. Leal also moves to
expedite his appeal and he seeks an order that would prevent the Texas
Department of Criminal Justice from executing him until we resolve his appeal.
For the reasons stated below, we AFFIRM the district court's order in all

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 11-70020

respects.  We DENY Leal's motion for a stay of execution and his request for a temporary restraining order ("TRO").  We GRANT Leal's motion to expedite and his motion to proceed in forma pauperis ("IFP").

I

This § 1983 appeal stems from Leal's conviction and death sentence for the slaying of sixteen-year-old Adria Sauceda.[1]  Proceeding IFP, Leal filed the instant pleading after he had repeatedly and unsuccessfully sought relief in state and federal courts.[2]  In his Amended Complaint,[3] Leal alleges violations of

---

[1] The details of this gruesome crime are recited in the district court's opinion, *Garcia v. Sanchez*, No. 5:09-CV-00950, _ F.  Supp. 2d _, 2011 WL 2489961, at *5–8  (W.D. Tex. June 20, 2011), as well as in *Leal v. State*, 303 S.W.3d 292, 294–95 (Tex. Crim. App. 2009).

[2] *See Leal v. State*, No. 72,210 (Tex. Crim. App. Feb. 4, 1998) (not designated for publication) (affirming conviction and sentence on direct appeal), *cert. denied*, 525 U.S. 1148 (1999); *Ex parte Leal*, No. WR-41,743-01 (Tex. Crim. App. Oct. 20, 1999) (unpublished) (denying first state habeas petition); *Leal v. Dretke*, No. 5:09-CV-01301, 2004 WL 2603736, at *7–34 (W.D. Tex. Oct. 20, 2004) (denying first federal habeas petition); *Leal v. Dretke*, 428 F.3d 543, 547–53 (5th Cir. 2005) (denying request for certificate of appealability on first federal habeas petition), *cert. denied*, 547 U.S. 1073 (2006); *Ex parte Cardenas*, No. WR-41,743-02, 2007 WL 678628, at *1 (Tex. Crim. App. Mar. 7, 2007) (not designated for publication) (dismissing second state habeas petition), *cert. denied sub nom. Garcia v. Texas*, 552 U.S. 1295 (2008); *Leal v. Quarterman*, No. 5:07-CV-00214, 2007 WL 4521519, at *4–25 (W.D. Tex. Dec. 17, 2007) (denying second federal habeas petition because it was successive, or, alternatively, denied on the merits), *aff'd in part, vacated in part by Leal Garcia v. Quarterman*, 573 F.3d 214 (5th Cir. 2009); *Leal Garcia*, 573 F.3d at 217–25 (holding second federal habeas petition to be non-successive, but dismissing same with prejudice on the merits); *Leal v. State*, 303 S.W.3d 292, 295–302 (Tex. Crim. App. 2009) (denying motion for post-conviction DNA testing of clothing at state level); *Garcia v. Thaler*, No. 05:11-CV-00482, 2011 WL 2479912, at *10–21 (W.D. Tex. June 22, 2011) (denying third federal habeas petition and refusing to grant a certificate of appealability); *Ex parte Leal*, No. WR-41,743-03 (Tex. Crim. App. June 27, 2011) (not designated for publication) (dismissing third state habeas petition and denying motion for stay of execution).

[3] Leal initially filed his § 1983 claim in 2009 and the district court denied the claim, relying on our holding in *Kutzner v. Montgomery Cnty.*, 303 F.3d 339, 340–41 (5th Cir. 2002) (per curiam).  Leal moved to alter or amend the judgment and the district court stayed proceedings while the Supreme Court considered whether a § 1983 action was an appropriate means for obtaining post-judgment DNA testing in a criminal case. *See Skinner v. Switzer*, 131 S. Ct. 1289 (2011).  The Court issued *Skinner* on March 7, 2011, holding that a § 1983 lawsuit was an appropriate means of obtaining DNA testing in criminal cases.  *Id*. at 1298, *overruling Kutzner*, 303 F.3d at 340–41.  Leal filed his Amended Complaint on June 14, 2011.

2

No. 11-70020

his Fourth, Eighth, and Fourteenth Amendment rights due to the Defendants–Appellees' possession of certain clothing items and biological materials that were introduced into evidence during Leal's capital murder trial. Leal seeks the evidence for "further testing to demonstrate his innocence of capital murder." Am. Compl. ¶ 29. The district court dismissed Leal's Amended Complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i). *Garcia v. Sanchez*, No. 5:09-CV-00950, 2011 WL 2489961 (W.D. Tex. June 20, 2011). In doing so, the district court concluded that Leal's § 1983 pleading was "based upon indisputably meritless legal theories" and that Leal's claims lacked any arguable legal basis. *Id*. at *16. That court also denied Leal's request for a TRO, concluding that Leal had failed to demonstrate a substantial likelihood of success on the merits of his § 1983 claim. *Id*. at *15–16. Leal appeals the district court's order dismissing his § 1983 claim.

II

Leal contends that the district court erred by dismissing his complaint as frivolous. We analyze a district court's dismissal of a complaint as frivolous under 28 U.S.C. § 1915(e)(2)(B)(i) by using an abuse of discretion standard of review. *Longoria v. Dretke*, 507 F.3d 898, 900 (5th Cir. 2007) (per curiam); *see also Harper v. Showers*, 174 F.3d 716, 718 & n.3 (5th Cir. 1999). "A district court 'abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence.'" *United States v. Smith*, 417 F.3d 483, 486–87 (5th Cir. 2005) (quoting *United States v. Mann*, 161 F.3d 840, 860 (5th Cir. 1998)).[4] Section 1915(e)(2)(B)(i) authorizes a district court to dismiss a case

---

[4] In its opinion, the district court noted that under 28 U.S.C. § 1915A, a prisoner's complaint may be dismissed if a district court finds the complaint to be frivolous, malicious, or inadequate to state a claim upon which relief may be granted. *Garcia v. Sanchez*, 2011 WL 2489961, at *5. Our review of a district court's legal conclusion under § 1915A is de novo. *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005) (per curiam). Here, we rely on an abuse of discretion standard of review because, other than the district court's passing mention to § 1915A, that court's subsequent legal analysis and conclusions relied on § 1915(e)(2)(B)(i).

No. 11-70020

"if the court determines that . . . the action or appeal is frivolous or malicious."
A frivolous claim is one that does not have any arguable basis in fact or law, or
is based on a legal theory that is without merit. *Samford v. Dretke*, 562 F.3d
674, 678 (5th Cir. 2009). A complaint that alleges violation of a legal interest
"which clearly does not exist" constitutes a claim lacking an arguable basis in
law.[5] *Id.* at 678.

Under § 1983, an individual may sue state actors to enforce federal
statutory and constitutional rights. *Anderson v. Jackson*, 556 F.3d 351, 356 (5th
Cir. 2009). To succeed on a § 1983 claim, an individual must prove that: (1) the
conduct in question was committed by an individual acting under the color of
state law; and, (2) the conduct deprived the claimant of a constitutional right.
*Kovacic v. Villarreal*, 628 F.3d 209, 213 (5th Cir. 2010). Here, Leal alleges that
officials violated his Fourth, Eighth, and Fourteenth Amendment rights by
refusing to release certain evidence that Leal had requested under Chapter 64
of the Texas Code of Criminal Procedure.

Chapter 64 of the Texas Code of Criminal Procedure permits an individual
to move for DNA testing of evidence secured "in relation to the offense that is the
basis of the challenged conviction and was in possession of the state during the
trial of the offense." TEX. CODE CRIM. PROC. ANN. art. 64.01(b). In cases such
as Leal's, the motion must demonstrate that "although previously subjected to
DNA testing, [the evidence] can be subjected to testing with newer testing
techniques that provide a reasonable likelihood of results that are more accurate
and probative than the results of the previous test." *Id.* art. 64.01(b)(2). The law
also requires the movant to show that: (1) the unaltered evidence is available for

---

[5] Leal asks us to consider whether a district court "can" dismiss his lawsuit based on
"the pleadings by determining *sua sponte* without benefit of an Answer or evidence that" the
factual allegations raised in the Complaint are untrue. Appellant's Br. 2. We point to the
plain language of § 1915(e)(2), which permits the district court to dismiss a case "*at any time.*"
(emphasis added); *see also Brewster v. Dretke*, 587 F.3d 764, 769 n.3 (5th Cir. 2009).

4

No. 11-70020

testing; (2) identity was at issue in the case; (3) there is a greater than fifty percent chance that the defendant would not have been convicted if DNA testing provided exculpatory results; and, (4) the motion is not made to delay the execution of a sentence. *Id.* art. 64.03(a); *see also Leal v. State*, 303 S.W.3d at 296.

Leal unsuccessfully sought access to the contested evidence under that state statute in Texas courts. Leal does not—and could not—collaterally challenge the Texas courts' interpretation or application of Texas law. *See Skinner v. Switzer,* 131 S. Ct. 1289,1297–98 (2011). Therefore, Leal can only prevail if he shows that the Texas statute, as applied, violated his rights under the Constitution. *Skinner*, on which Leal relies, did not enlarge the "slim" right of a state prisoner seeking DNA testing "to show that the governing state law denies him procedural due process." *Id.* at 1293 (citing *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 129 S. Ct. 2308, 2321 (2009)). Adapting to the rise of increasingly sophisticated DNA evidence is a "task [that] belongs primarily to the legislature." *Osborne*, 129 S. Ct. at 2316. We will intervene only if the State's framework "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* at 2320 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992) (capital case)).

Under that legal framework, the question we consider is: did the district court abuse its discretion by concluding that Leal's claims of constitutional violations were frivolous because further DNA testing of the evidence would not create serious doubt as to Leal's guilt of capital murder?

### III

Leal argues that the district court made flawed legal conclusions as to the frivolous nature of the Amended Complaint because that court "failed to consider

5

the potentially exculpatory nature of the sought-after DNA tests." Appellant's Br. 11. Leal also asserts that the district court's conclusions were erroneous because that court had refused to consider evidence that established "the unreliability of the prosecution's trial evidence." *Id*. We disagree.

Leal's Amended Complaint alleges that, although he was convicted of capital murder on an indictment that alleged sexual assault and kidnapping, the jury's verdict did not specify on which allegation the jury had based its verdict and death sentence. Due to the indictment's lack of specificity, Leal argues that access to the requested evidence for DNA testing is paramount as "there was virtually no evidence of kidnapping and the prosecution rested its case largely on the allegation of sexual assault." Am. Compl. ¶13. The Amended Complaint asserts that "there is a reasonable probability" that Leal could establish his innocence of the sexual assault allegation, and, therefore, the capital murder charge, if given access to the requested evidence. *Id*. at ¶ 16. Leal also asserts that "without [the state's] DNA testimony, there was no reliable evidence that [ ]Leal sexually assaulted the victim." *Id*. at ¶ 17. But these assertions are based on a distorted view of evidence contained in the record.

Uncontested evidence in the record belies the claim that without the DNA evidence sought by Leal there is "*no* reliable evidence that [ ]Leal sexually assaulted the victim." *Id*. (emphasis added). Even when one disregards certain evidence that Leal now contests or seeks for further testing, the evidence establishes that the night on which Sauceda was sexually assaulted and slain: (1) Leal carried an intoxicated semi-conscious Sauceda into his car; (2) when Leal placed Sauceda in his car she was clothed; (3) when Sauceda's body was discovered she was nude; (4) Leal was the last known individual to see Sauceda alive; (5) Leal confessed to police and his brother that he had killed Sauceda; (6) when Sauceda's body was discovered there was a stick about fourteen to sixteen inches long, with a screw at the end of it, protruding from Sauceda's vagina; (7)

a piece of Sauceda's bloodied clothing was located at Leal's home; and, (8) under Texas law, sexual assault may be committed by penetration with any object. *See Leal v. State*, 303 S.W.3d at 301.

Regardless of whether further DNA tests reveal that the blood on Leal's clothing was not Sauceda's, this would not disprove that Leal sexually assaulted Sauceda with a piece of wood. In fact, the contested DNA evidence that potentially links Sauceda's bodily fluids to the stains on the plaintiff's underwear had limited significance for the State's charge that Leal had killed Sauceda while penetrating, or attempting to penetrate, Sauceda's vagina with a piece of wood. The facts established at trial show that the significance of the bloody underwear was dwarfed by other evidence that demonstrated Leal sexually assaulted Sauceda with the piece of wood.[6] Accordingly, the district court did not err by concluding that further DNA testing of Leal's underwear would not significantly exculpate him of the capital murder charge.[7] Nor did the district court err by determining that Leal would not be deprived of any constitutionally

---

[6] On appeal, Leal argues that the district court mischaracterized and erroneously relied on evidence from the trial that relates to bite marks found on Sauceda's body and luminol tests that found the presence of blood inside Leal's car. Even if the district court should not have relied on this evidence, the remaining evidence permits for the conclusion that Leal sexually assaulted Sauceda.

[7] Leal further argues that the district court twice erred by misapplying the Supreme Court's holding in *Heck v. Humphrey*, 512 U.S. 477 (1994). He argues first that the district court incorrectly relied on *Heck* to discount evidence that arose after trial that would, Leal asserts, tend to exonerate him. Specifically, Leal points to evidence undermining the reliability of bite-mark evidence and testimony from Leal's parents suggesting that his mother had been responsible for bringing Sauceda's shirt into the home. Despite this evidence, the case against Leal for capital murder is sufficiently overwhelming that it would not be undermined by new DNA testing of the evidence sought by Leal. Second, Leal argues that the district court incorrectly applied *Heck* to conclude that his Fourth Amendment claim was barred. *See Garcia v. Sanchez*, 2011 WL 2489961, at *16. It is clear from the district court's opinion, however, that it treated the Fourth Amendment claim as barred only insofar as it went beyond a *Skinner* claim for access to evidence for testing. Leal concedes that there is "no material distinction" between his Fourth Amendment claim and a *Skinner* claim. Appellant's Br. 27. The district court did not err by enforcing the very boundaries Leal concedes.

protected liberty or property interest by virtue of the State's continued refusal to release Leal's clothing for further DNA testing. *See Osborne*, 129 S. Ct. at 2320. The district court did not abuse its discretion by concluding that Leal's § 1983 claim was frivolous because the claim has no arguable basis in fact or law, and the claim is based on a theory completely without merit. *Samford*, 562 F.3d at 678.[8]

## IV

In addition to his § 1983 claim, Leal has moved for a stay of execution and temporary restraining order that would "prevent[ ] the Texas Department of Criminal Justice from executing him until this appeal has been resolved."[9]

We consider four factors in determining whether a stay should issue:

> (1) whether the movant has made a showing of likelihood of success on the merits, (2) whether the movant has made a showing of irreparable injury if the stay is not granted, (3) whether the granting of the stay would substantially harm the other parties, and (4) whether the granting of the stay would serve the public interest.

*Herrera v. Collins*, 954 F.2d 1029, 1033 (5th Cir. 1992) (citation omitted). In a capital case, the movant is not always required to show a probability of success on the merits, but "'he must present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities [i.e., the other three factors] weighs heavily in favor of granting a stay.'" *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir. 1992) (alteration in original) (quoting

---

[8] Leal's Amended Complaint also alleges that there was "virtually no evidence of kidnapping." While the district court's opinion addressed this argument, our holding on the sexual assault charge forecloses the need to address this assertion.

[9] Although Leal's motion ostensibly seeks two separate forms of relief, *see* Mot. for Temporary Restraining Order and Stay of Execution, we note that Leal is seeking one outcome—a delay in his execution until decision of his § 1983 appeal. We apply the same substantive test under either theory of relief. *See, e.g.*, *Weng v. United States Attorney General,* 287 F.3d 1335, 1338 n.5 (11th Cir. 2002), *abrogated on other grounds by Nken v. Holder*, 129 S. Ct. 1749 (2009).

No. 11-70020

*Celestine v. Butler*, 823 F.2d 74, 77 (5th Cir. 1987)), *cert. denied*, 503 U.S. 1001 (1992); *see also Ruiz v. Estelle*, 666 F.2d 854, 856–57 (5th Cir. 1982).

The gravamen of Leal's claim in favor of a stay is that the DNA evidence sought in his § 1983 action will "establish his innocence of capital murder." Mot. for Temporary Restraining Order and Stay of Execution 8. For the reasons described in Section III above, we find otherwise. Leal's arguments in support of the remaining factors fail to outweigh his inability to present a substantial case upon which equitable relief may be granted. The balance of equities weighs against granting Leal's combined motion for a stay of execution and temporary restraining order.

V

Accordingly, we AFFIRM the district court's order dismissing Leal's Amended Complaint. We DENY his motion for a stay of execution and his request for a TRO. We GRANT his motions to expedite and to proceed IFP.

9