# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 28, 2011

No. 11-40407
Summary Calendar

Lyle W. Cayce
Clerk

JO ANNA MILES,

Plaintiff-Appellee

v.

LAMAR BECKWORTH,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
(10-CV-8)

Before KING, JOLLY, and GRAVES, Circuit Judges.

PER CURIAM:[*]

This interlocutory appeal arises from the district court's denial of the defendant's motion to dismiss or in the alternative for summary judgment. Plaintiff filed this 42 U.S.C. § 1983 action based on her First Amendment retaliation claim. Plaintiff made sexual harassment claims against Thomas Bledsoe (Bledsoe), plaintiff's former supervisor at the Texas Department of

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-40407

Public Safety (DPS).  Criminal charges were filed in connection with the sexual harassment claim and plaintiff testified against Bledsoe at the criminal trial. Plaintiff alleges that the defendant terminated her position as an administrative assistant because she testified against Bledsoe.  The initial investigation into her harassment claim produced evidence suggesting that Bledsoe acted inappropriately.  The defendant ordered a second investigation under the suspicion that plaintiff may not be credible.  On the basis of the second investigation, the defendant concluded that there was insufficient evidence to support the plaintiff's sexual harassment allegation.  Two days after Bledsoe's criminal trial, the defendant informed Cherokee County that it no longer needed Cherokee County to provide it with an assistant.  The court found that plaintiff alleged sufficient facts to support her retaliation claim in this lawsuit and the defendant is not entitled to qualified immunity.  We AFFIRM.

## Facts[1]

The facts and circumstances surrounding the plaintiff's separation from employment with Cherokee County and DPS are disputed.  In February, 2009, plaintiff, Jo Anna Miles (Miles), worked as an administrative assistant to Bledsoe in Cherokee County, Texas.  Bledsoe was the Highway Patrol Sergeant in Cherokee County for DPS.  Although Miles was assigned to work at DPS, she was an employee of Cherokee County.  At the time, Miles was the only

---

[1] The plaintiff worked at Jacksonville DPS office on loan from Cherokee County to the State.  Plaintiff sued Lamar Beckworth of DPS in addition to four other defendants in district court:  Thomas Bledsoe, David Baker, Shanandoah Webb, and Dwight Mathis.  Only Lamar Beckworth is a party on appeal.  Plaintiff alleged First Amendment retaliation and tortious interference with an existing business relationship.  Against Bledsoe, she had an additional claim for civil assault.  Plaintiff voluntarily dismissed Baker, Webb, and Mathis.  Defendants Beckworth and Bledsoe filed separate motions to dismiss and for summary judgment. The district court granted Bledsoe's motion to dismiss. The court granted Beckworth's motion to dismiss the tortious interference claim but denied his motions on the First Amendment retaliation claim. Defendant Beckworth appeals from the court's order denying qualified immunity on the First Amendment retaliation claim.

administrative assistant Cherokee County provided on loan to DPS. On or about February 3, 2009, Miles accused Bledsoe of exposing his penis to her at work. She subsequently made a complaint to various officials. An investigation concluded that Miles was telling the truth and Bledsoe was suspended with pay and transferred to the Tyler DPS office. Miles also filed criminal charges against Bledsoe with the Jacksonville Police Department. Miles spoke of this alleged harassment with DPS investigators including Lieutenant Shanandoah Webb (Webb). Webb conducted the initial investigation and determined that Miles's indecent exposure claim had merit. Webb also offered deposition testimony in connection with Miles's claim. She testified that considering the credibility of the persons involved and the substance of the statements, "I do believe the [indecent exposure] incident occurred." Miles received a letter dated July 16, 2009, from Chief David Baker (Baker), Assistant Director of DPS, stating that the information obtained during the investigation revealed conduct of sexual harassment by Bledsoe and that appropriate disciplinary action would be taken.

As a part of the investigation, Bledsoe and his attorney met with defendant Lamar Beckworth (Beckworth), the Director of DPS. Miles alleges that Bledsoe provided false information about her to Beckworth and that Bledsoe intended to "stir up" resentment against her. After his meeting with Bledsoe, Beckworth ordered a new investigation and asked the Texas Rangers to check whether Miles had a history of making false complaints. Sergeant Flores stated in a DPS interoffice memorandum that Miles had a history of making false indecent exposure claims. Miles alleges that the new investigation was to cover-up Bledsoe's wrongdoing. According to Webb, this is the only time she could recall when an officer would "re-do" an investigation that had already been completed. Beckworth testified that based on the completion of the second investigation, there was insufficient evidence to support a finding that Bledsoe harassed Miles. Beckworth sent Miles a letter dated September 9, 2009,

claiming that the July 16, 2009, letter from Baker had been sent in error and that Bledsoe was not being discharged because there was insufficient evidence to prove or disprove Miles's allegations.

Bledsoe's criminal trial began on September 28, 2009 and concluded on September 30, 2009. Miles testified at trial against Bledsoe. The jury returned a not guilty verdict. On October 2, 2009, two days after the conclusion of the trial, Baker, under Beckworth's direction, dispatched a letter to Cherokee County to inform it that DPS no longer needed Cherokee County to provide it with an administrative assistant. Miles alleges that Beckworth had the ultimate authority to abolish her position and terminated her after Bledsoe's trial concluded. Beckworth, however, holds that he lacked authority to terminate Miles because she was Cherokee County's employee. On October 9, 2009, Chief Mathis appeared in Miles's office and gave her a letter dated October 8, 2009, telling Miles she must be out of the office by 5:00 p.m. that day. Shortly after her dismissal, Miles executed a Release, Settlement, and Covenant Agreement with Cherokee County. In exchange for nine months salary, Miles released Cherokee County of various claims including sexual harassment, retaliation, and failure to retain plaintiff as an employee.

## Standard of Review

"Generally this Court does not have jurisdiction over interlocutory appeals of the denial of motions for summary judgment because such pretrial orders are not "final decisions" for the purpose of 28 U.S.C. § 1291 [ ]." *Tamez v. City of San Marcos, Texas*, 62 F.3d 123,124 (5th Cir. 1995)*(*citing *Sorey v. Kellett*, 849 F.2d 960, 961 (5th Cir. 1988))("Under 28 U.S.C. § 1291, the courts of appeals have jurisdiction over 'final decisions' of the district courts. Ordinarily, this section precludes review of a district court's pretrial orders until appeal from the final judgment."). The Supreme Court, however, has held that a "district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of

No. 11-40407

law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291, not withstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see also Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995).

This court reviews *de novo* a district court's denial of a motion for summary judgment on the basis of qualified immunity. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010)(citing *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004)). "[W]e are restricted to determinations of 'question[s] of law' and 'legal issues,' and we do not consider the correctness of the plaintiff's version of the facts." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)(citation omitted). "When deciding an interlocutory appeal of a denial of qualified immunity, we do not have jurisdiction to review the genuineness of any factual disputes but can decide whether the factual disputes are material." *Kovacic,* 628 F.3d at 211, n.1 (citing *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir. 2000)). "Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true." *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004)(en banc)(citation omitted).

## Discussion

To hear interlocutory appeals based on qualified immunity, we distinguish two parts of the district court's order: (1) where "the district court decides that a certain course of conduct would, as matter of law, be objectively unreasonable in light of a clearly established law; and (2) where the court "decides that a genuine issue of fact exists regarding whether the defendant(s) did in fact engage in such conduct." *Kinney*, 367 F.3d at 346. Both Supreme Court and Fifth Circuit precedents hold that this court lacks jurisdiction to review the second type of interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 313

5

No. 11-40407

(1995); *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 634 (5th Cir. 1999).[2]

This court employs a two-step process to determine whether a "certain course of conduct" was "objectively unreasonable" as a matter of law. We first determine whether the official's conduct violated plaintiff's constitutional right. *Kinney*, 367 F.3d at 356. We then determine whether "the contours of [plaintiff's] right [were] sufficiently clear [at the time of the alleged violation] that a reasonable official would understand that what he is doing violates that right." *Id.* at 356-357 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). When determining whether a "certain course of conduct" would be "objectively unreasonable" as a matter of law, "we consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment." *Id.* at 348 (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).

A) First Amendment Retaliation Claim

Upon reviewing the plaintiff's second amended complaint and the evidence on record, the district court determined that Miles had alleged sufficient facts and details to show that Beckworth's conduct violated her First Amendment right to be free from retaliation for protected speech.

---

[2] This court lacks jurisdiction to review the denial of an official's motion for summary judgment based on the district court's finding that factual questions remain on whether the defendant acted in a way that would violate clearly established law. Because of this limitation, officials occasionally will have to proceed to trial, although the ultimate resolution of those factual disputes may show that the official is entitled to qualified immunity. This 'threatens to undercut' the policy of providing officials qualified immunity from trial but the Supreme Court in recognizing this has taken the position that "countervailing considerations" support limited interlocutory jurisdiction. *Kinney*, 367 F.3d at 347 n.8 (citing *Johnson v. Jones*, 515 U.S. at 317-318).

No. 11-40407

"The government may not constitutionally compel persons to relinquish their First Amendment rights as a condition of public employment." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir. 1999)(citing *Keyishian v. Bd. of Regents of the Univ. of the State of N.Y.*, 385 U.S. 589, 604 (1967)). The plaintiff seeking recovery against a state official must establish four elements under a First Amendment retaliation claim: (1) plaintiff must suffer an adverse employment decision; (2) plaintiff's speech must involve a matter of public concern; (3) the plaintiff's concern must outweigh the defendant's interest in promoting efficiency; and (4) the plaintiff's speech must have motivated the defendant's actions. *Id.; Kinney*, 367 F. 3d at 356. On appeal, Beckworth does not challenge the second and fourth prongs but argues that Miles has not effectively established the first and third prongs of her First Amendment retaliation claim. We will examine prongs one and three in turn.

As to the first prong, Beckworth argues that his request to transfer Miles cannot be an adverse employment action. Adverse employment actions against an employee include discharges, demotions, refusals to hire, refusals to promote, and reprimands. *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997).

It is not clear which party or parties possessed actual authority on this particular employment decision. But Miles alleges that Beckworth is actually the final decision-maker with regard to her employment despite her status as a Cherokee County employee. She points to testimonial evidence provided by Beckworth where he asserted that "the buck stops with [him]" with respect to terminating Miles's position. And Miles's position was eliminated shortly after she testified against Bledsoe at trial. She received a letter from Chief Mathis, ordering her to leave DPS. Miles was terminated from DPS and later signed an agreement releasing Cherokee County from liability. And the extremely close timing between Miles's testimony at Bledsoe's trial and Beckworth's decision to "laterally transfer" her upon the conclusion of trial bolsters Miles's First

7

No. 11-40407

Amendment retaliation claim. "[The] [c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997)(citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)). We cannot and need not consider whether Beckworth's conduct did in fact lead to Miles's termination. The plaintiff has alleged sufficient facts that could establish an adverse employment action under the first prong. The second and fourth prongs are undisputed, thus Beckworth's challenge to the third prong only remains.

Under the third prong, the plaintiff must show that her interest in commenting on matters of public concern outweigh the defendant's interest in promoting efficiency. *Harris,* 168 F.3d at 220. The third prong normally would employ a balancing test as set forth in *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).[3] *Kinney*, 367 F. 3d at 356. At the current stage of this lawsuit, the district court did not need to consider the third element.[4] If it were required to, however, the court would find for Miles because Beckworth failed to present any argument as to how Miles's speech: 1) impaired discipline by her supervisors, 2) disrupted harmony among co-workers, 3) had a detrimental impact on close working relationships for which personal loyalty and confidence are necessary,

---

[3] *Pickering,* 391 U.S. 563, 568 (1968) (The test involves a "balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.").

[4] *Kennedy v. Tangipahoa Parish Library Bd. Of Control*, 224 F.3d 359, 366 n.9 (5th Cir. 2000) (explaining, with respect to a Rule 12(b)(6) motion to dismiss, that the third element, "being the factually-sensitive balancing test that it is, implicates only the summary judgment, not failure to state a claim, analysis.")

or, (4) impeded the performance of plaintiff's duties or interfered with regular operation of DPS.[5]  We agree.

Our review of the record and the parties' arguments show that there are genuine issues of fact which remain.  Whether Beckworth had authority to abolish Miles's position even though she was a Cherokee County employee is a disputed issue of fact.  The reasons for Miles's separation from employment are in dispute.  These material facts are unresolved.  At this stage, Miles has alleged sufficient facts that, if established as true, could satisfy the elements of her First Amendment retaliation claim.

## B) Entitlement to Qualified Immunity

We now turn to the question of whether the defendant is entitled to qualified immunity.  "Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Also, under the clearly established test, this court must consider whether the defendant's actions were objectively reasonable.  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of [a] right [are] sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)(citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[T]he Supreme Court has repeatedly admonished courts not to define clearly established law at a high level of generality, this does not mean that "a case directly on point" is required. Rather, "existing precedent must have placed the statutory or constitutional question

---

[5] Case No. 6:10-cv-8, District Court Order on Motion to Dismiss at 8.

No. 11-40407

*beyond debate.'"' Morgan v. Swanson*, No. 09-40373, slip op. at 154 (5th Cir. Sept. 29, 2011)(en banc)(citing *al-Kidd*, 131 S.Ct. at 2083)(emphasis in original).

Beckworth contends that Miles's First Amendment retaliation claim is not based on clearly established federal law. Prior cases, however, have established that testimony in judicial proceedings are inherently of public concern for First Amendment purposes. *Johnston v. Harris Cnty. Food Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989) ("When an employee testifies before an official government adjudicatory or fact-finding body, he speaks in a context that is inherently of public concern"); *Smith v. Hightower*, 693 F.2d 359, 368 (5th Cir. 1982)(holding that testimony in criminal proceedings is protected speech); *Reeves v. Claiborne Cnty. Bd. of Educ.*, 828 F.2d 1096, 1100 (5th Cir. 1987)(holding that testimony in civil proceedings is protected speech). First Amendment protection for Miles's speech is clearly established.

Beckworth emphasizes the fact that he was not Miles's employer. But the record suggests that Beckworth might have possessed the authority to eliminate her position, despite NOT being her employer. Moreover, the *Kinney* court discussed governmental relationships between individuals. It held that:

> *"("Pickering* balancing analysis is appropriate in cases involving the government's independent contractors or providers of regular services as well as its employees because both "type[s] of relationship provide [ ] a valuable financial benefit, the threat of the loss of which in retaliation for speech may chill speech on matters of public concern.") The Police Officials had the power to deny [plaintiffs] significant benefits as ETPA instructors, and it is the existence of that sort of power - and not mere labels describing governmental relationships - that is relevant for purposes of the First Amendment."

10

No. 11-40407

*Kinney*, 367 F.3d at 368 (citations omitted). Here, Beckworth as the Director of DPS, allegedly had the authority to deny employment to Miles who, at the time, was providing regular services to DPS. And, as *Kinney* holds, Beckworth's authority, not mere labels, is relevant to the analyses of Miles's retaliation claim.

## Conclusion

At this stage of the proceedings, factual issues remain which preclude the granting of defendant's motion to dismiss or for summary judgment. For the foregoing reasons, we AFFIRM the district court.